**[Cite as *State v. M.A.C.*, 2026-Ohio-1863.]**

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 115273 |
| M.A.C., | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 21, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-614697-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Chauncey Keller and Michael R. Wajda, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Rick Ferrara, Assistant Public Defender, *for appellant.*

LISA B. FORBES, P.J.:

{¶ 1} Defendant-appellant M.A.C. appeals from the trial court's denial of his petition for expungement of his criminal conviction. For the reasons that follow, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2} M.A.C. is a former Ohio attorney who resigned his license to practice law because of his underlying criminal actions in this case. In September 2017, M.A.C. pleaded guilty to three fourth-degree felony offenses: grand theft, attempted tampering with government records, and forgery, in connection with his theft of a client's funds. The trial court sentenced M.A.C. to six months in the county jail to be followed by five years of community control. M.A.C. was also ordered to pay court costs and restitution "in the amount of $50,000 to [the] named victim; payable through the probation department."

{¶ 3} Thereafter, the victim received $50,000 from the Ohio Lawyers' Fund for Client Protection — a fund established by the Ohio Supreme Court to compensate victims for damages incurred as the result of legal malfeasance. On April 19, 2019, the court issued a judgment entry ordering M.A.C. to pay the Lawyers' Fund for Client Protection the $50,000 in restitution it paid the victim on M.A.C.'s behalf. On December 29, 2019, M.A.C. filed a pro se lawsuit against the victim alleging that the victim had committed fraud and had been unjustly enriched by receiving payment from the Lawyers' Fund for Client Protection. In response, the State filed a notice with the trial court alleging that M.A.C.'s lawsuit violated his community control. The trial court found M.A.C. to have violated the terms of his community control by suing the victim. It ordered M.A.C. to dismiss the lawsuit and to serve two months of house-arrest for the violation.

{¶ 4} On August 1, 2022, M.A.C. again appeared before the trial court for a probation violation. The basis of the violation was allegations that M.A.C. had violated his probation by testing positive for alcohol on three different occasions throughout 2022. The prosecution noted that M.A.C. had "an outstanding balance towards his financials" owing $49,520 in restitution on top of fines and fees. Nevertheless, the prosecution asked that the court consider allowing M.A.C.'s probation to expire on schedule on September 29, 2022, pending satisfaction of the outstanding money owed. In response, defense counsel noted that M.A.C. was in recovery and had a job delivering pizzas for $11 an hour. Defense counsel explained that the Ohio Lawyers' Fund for Client Protection had paid the restitution owed to the victim and that M.A.C. had a contractual agreement with the fund to repay it. According to defense counsel, the "victim has been made whole." While the court found M.A.C. to be in violation of his probation, it ordered that M.A.C.'s probation would terminate as scheduled on September 29, 2022, and ordered that "all remaining fines and fees are hereby waived." The order noted that "all restitution has been paid by the Ohio Lawyers' Fund for Client Protection."

{¶ 5} In February 2024, M.A.C. filed an application to seal his record of conviction under R.C. 2953.31 through 2953.61, arguing that his offenses were of the type eligible for sealing, that he had waited for the applicable time period following final discharge from his sentence to apply for sealing, and that he had no criminal proceedings pending. An expungement report/investigation was ordered. The State opposed the application to seal, arguing, among other things that M.A.C. was

"statutorily ineligible for sealing because he [had] not achieved final discharge — he still owes *$49,470* in restitution." (Emphasis in original.) On May 7, 2025, a hearing was held on the application to seal. Following the hearing, on May 30, 2025, the court issued a journal entry denying the application to seal stating:

> The court is persuaded by the State's argument, offered at the May 7, 2025 hearing, that defendant still owes restitution. The victims of defendant's crimes while he was a lawyer were compensated by the fund, but it was not "restitution," as such. That obligation still remains with [the] defendant.

{¶ 6} M.A.C. now appeals from the trial court's denial of his application to seal his conviction by raising the following single assignment of error: "The trial court erred in denying defendant's application to seal his criminal record."

## II. Law and Analysis

{¶ 7} There is a distinction between sealing a criminal record and expunging criminal record. "Expungement often refers to the destruction, deletion, or erasure of records so they are no longer retrievable." *State v. T.C.N.*, 2023-Ohio-3156, ¶ 9 (8th Dist.), citing *Capital One Bank United States, N.A. v. Essex*, 2014-Ohio-4247, ¶ 11 (2d Dist.), referencing former R.C. 2953.37(A)(1) and 2953.38(A)(1). "Sealing, to the contrary, does not require the destruction of the records but limits access to the records to specific persons/entities." *Id*. Law enforcement and prosecuting attorneys are among those with access to sealed records. *Id.*

{¶ 8} R.C. 2953.32 governs the sealing of criminal records. Pursuant to R.C. 2953.32(B), a court may seal a record if the applicant's conviction is not one

listed as exempted from sealing under R.C. 2953.32(A)(1) and the applicant is otherwise an "eligible offender." Among other things, to be eligible for sealing, an offender must have waited a requisite period of time after "final discharge" of their sentence to apply for sealing. *See* R.C. 2953.32(B)(1)(a). Although the phrase "final discharge" is not defined in the statute, it has been interpreted to mean the completion of all sentencing requirements imposed by the court, including the requirement to pay restitution. *See State v. P.J.F.*, 2022-Ohio-4152, ¶ 10-13. For fourth-degree felony convictions like those at issue in this case, the requisite waiting period after final discharge is one year. *See* R.C. 2953.32(B)(1)(a)(ii).

{¶ 9} Once a court determines an offender is eligible for record sealing, it must make several determinations under R.C. 2953.32(D), including whether the applicant has been rehabilitated, and whether the interests of the applicant in having his or her record sealed outweigh the legitimate needs, if any, of the government in maintaining the records.

{¶ 10} A trial court's disposition of an application to seal a record of conviction is generally reviewed under an abuse-of-discretion standard. *State v. H.M.*, 2025-Ohio-46, ¶ 12 (8th Dist.). However, whether an applicant is considered an eligible offender under R.C. 2953.32 is an issue of law that is reviewed de novo. *Id.*

{¶ 11} In this case, the trial court determined that M.A.C. was ineligible for record sealing because he had not achieved final discharge of his sentence because he had not paid his restitution. On appeal, M.A.C. argues that this determination is

incorrect because in the court's August 2022 order terminating his community control the court noted that "all restitution has been paid by the Ohio Lawyers' Fund for Client Protection." M.A.C. interprets this statement as "discharging" his obligation to pay restitution and argues that that determination became final when the State did not directly appeal the order. Along these lines, M.A.C. argues that the trial court's order denying his application to seal improperly "modified" the court's restitution order after he had been discharged from that obligation by the August 2022 entry. He argues that the court did not have jurisdiction to modify the restitution order after he had completed his community-control sentence. In addition, M.A.C. argues that statutorily he is under no obligation to pay restitution because R.C. 2929.281(A) states that restitution "shall be reduced by any payments to the victim for economic loss made or due under a policy of insurance or governmental program." M.A.C. argues that the Lawyers' Fund for Client Protection is a "governmental program" as contemplated by the statute. We are not persuaded by M.A.C.'s arguments.

{¶ 12} To begin, there is an outstanding order from the trial court, dated April 29, 2019, that expressly obligates M.A.C. to pay the Lawyers' Fund for Client Protection $50,000 in restitution. Nothing in the August 2022 order indicates that M.A.C.'s obligation to pay restitution was discharged. Rather, the August 2022 order simply states that "all restitution has been paid by the Ohio Lawyers' Fund for Client Protection." This is a straightforward statement of fact, not a release of M.A.C.'s underlying responsibility. Indeed, where restitution has been ordered, the

obligation to pay persists even after a court terminates community control. *See State v. Aguirre*, 2014-Ohio-4603, ¶ 19 ("When restitution is owed, discharge from community control does not effect a final discharge for purposes of R.C. 2953.32(A)(1)."). In other words, a trial court's decision to terminate or discharge a defendant from community control has no effect on the original restitution order, which remains intact. From the face of the August 2022 order, that is precisely what occurred here.

{¶ 13} Accordingly, the court did not discharge M.A.C.'s obligation to pay restitution, and, as a result, the State did not waive any issue by declining to appeal the order, nor did the trial court improperly modify the restitution order when it later denied M.A.C.'s application to seal the record.

{¶ 14} With respect to M.A.C.'s contention that R.C. 2929.281(A) requires restitution to be reduced by any payment made to the victim by a governmental fund, we note at the outset that R.C. 2929.281 was not in effect when the trial court initially imposed restitution or when it issued its August 2022 order terminating community control. Rather, R.C. 2929.281 was enacted as part of 2022 H.B. No. 343 and became effective on April 6, 2023. The statute provides, in relevant part:

> In determining the amount of restitution at the time of sentencing under this section, the court shall order full restitution for any expenses related to a victim's economic loss due to the criminal offense. *The amount of restitution shall be reduced by any payments to the victim for economic loss made or due under a policy of insurance or governmental program.*

(Emphasis added.)  R.C. 2929.281(A).

{¶ 15} The plain language of R.C. 2929.281 requires the court at sentencing to reduce restitution by amounts paid through insurance or governmental programs. However, amendments to R.C. 2929.18, which were also enacted through 2022 H.B. 343, clarify that a trial court retains continuing jurisdiction to modify the terms of restitution.  Specifically, upon motion by the offender, the victim, or the victim's representative, the court may reduce restitution to account for such third-party payments.  R.C. 2929.18(A)(1) provides, in relevant part:

> The victim, victim's estate, or victim's attorney, if applicable, may file a motion or request that the prosecutor in the case file a motion, or the offender may file a motion, for modification of the payment terms of any restitution ordered.  If the court grants the motion, it may modify the payment terms as it determines appropriate *but shall not reduce the amount of restitution ordered, except as provided in division (A) of section 2929.281* of the Revised Code.  The court shall not discharge restitution until it is fully paid by the offender.

(Emphasis added.)

{¶ 16} Accordingly, the trial court's August 2022 judgment entry terminating M.A.C.'s community control and acknowledging that the Lawyers' Fund for Client Protection had compensated the victim cannot reasonably be construed as an application to modify under R.C. 2929.281, because that statute was not yet in effect.  Although the statute now provides a mechanism for reducing restitution based on such payments, M.A.C. cannot get the benefit of the statute without first following the procedural requirements of R.C. 2929.18(A)(1) by filing a motion with the trial court seeking modification of the restitution amount to reflect the reduction

in the amount paid by the fund.[1]  Thus, at this time and on these facts, M.A.C. is ineligible for the sealing of his record.

## III. Conclusion

{¶ 17}  For the foregoing reasons, we overrule M.A.C.'s assignment of error and affirm the trial court's denial of M.A.C.'s application to seal his record of conviction.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR

---

[1] It is unclear whether the Lawyers' Fund for Client Protection qualifies as a "governmental program" under R.C. 2929.281 such that any payments made from the fund must be offset against the amount of restitution owed.  Indeed, courts have recognized that the fund itself constitutes a governmental agency that may itself be entitled to restitution for payments made to victims.  *See, e.g., State v. Crosby*, 2024-Ohio-2877, ¶ 17–21 (1st Dist.).